UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                               :

LUCAS STEVENS, GUSTAVO FERNANDEZ,   :
CHRISTIAN LONG, SAMUEL MARKLE,     :
GUNN WOO PARK and JOSE PADILLA,     :   18-CV-_____ (____)
individually and on behalf of other similarly-  :
situated individuals,                     :

                 Plaintiffs,    :   **COLLECTIVE**
                               :   <u>**ACTION COMPLAINT**</u>
                               :
       -against-       :   <u>**JURY TRIAL DEMANDED**</u>
                               :
GOBUYSIDE INC. and ARJUN KAPUR,     :
                               :
            Defendants.    :
                               :
------------------------------------------------------------x

Plaintiffs Lucas Stevens ("Stevens"), Gustavo Fernandez ("Fernandez"), Christian Long ("Long"), Samuel Markle ("Markle"), GunnWoo Park ("Park") and Jose Padilla ("Padilla") (collectively, the "Plaintiffs"), by and through their attorneys, Cerasia & Del Rey-Cone LLP, for their Complaint against defendants GoBuyside Inc. and Arjun Kapur ("Kapur") (collectively, the "Defendants"), on behalf of themselves and others who are similarly-situated, allege as follows:

<u>**NATURE OF ACTION**</u>

1.      Kapur, the Chief Executive Officer, founder and majority shareholder of GoBuyside, runs his company as an absolute dictator with the purpose and effect of creating an atmosphere of involuntary servitude by failing to comply with applicable employment laws, including the wage and hour laws.  In fact, even though Defendants have classified the Analysts and Associates as "exempt" from overtime pay under the wage and hour laws, Kapur, who regularly works from his home or a separate office, closely monitors his misclassified employees' every move and records their work hours and clerical tasks virtually to the minute by

watching them through a Nest camera he set up in the office and, *without* Plaintiffs' consent or knowledge, of which they only recently learned, he eavesdropped on their work and personal conversations through his Nest system.  While Plaintiffs were more than capable of performing exempt work in their roles as Analysts and/or Associates, Kapur simply prohibited them from doing so through his overreaching control of their tasks and time.

2.      Through deceit and trickery, Kapur entices recent and well-credentialed college graduates to join GoBuyside to help him in his goal to amass a small fortune recruiting candidates for employment with private equity, hedge fund and financial services clients for which GoBuyside provides employment recruitment services.  Along the way, however, Kapur has failed to pay overtime wages or other earned wages to Plaintiffs and similarly-situated individuals holding the title of Analyst or Associate.  Kapur also has used purported retention or sign-on bonuses with claw-back provisions as a mechanism to pay employees for their past earned wages, and then, when employees depart, he pursues them under these claw-back provisions to recoup illegally their earned wages, even offering them to work for free for several weeks to pay off what he characterizes as a debt.

3.      Yet, even with Kapur's bait-and-switch tactics and heavy-handed behavior, GoBuyside's employees work tirelessly – regularly over 50 or 60 hours per week, without overtime compensation – until they catch onto his tricks and finally confront him about his unlawful pay practices and mistreatment.  At that point, Kapur seeks to turn the tables on employees, and retaliates against them for seeking their earned wages, including by admittedly refusing to pay bonuses or wages for their protected activity, by threatening them with legal

action or unlawfully deleting "connections" from their personal LinkedIn accounts when they prepare to leave their employment at GoBuyside.[1]

4.     Kapur violates employment laws with impunity, whether those are the wage and hour laws or the anti-discrimination laws.  Indeed, in recruiting candidates for his financial services-based clients to employ, he has directed GoBuyside employees, including some of the Plaintiffs, to find "a White bro" or "a girl" or "a chick" for open jobs, and has commented in writing when he believes a candidate is "gay" or "not Jewish."  In addition, in an open meeting with staff in December 2017, Kapur stated that Padilla, who is from Honduras, was back at "his plantation."  Similarly, in November 2017, after New York City enacted a law that made it unlawful to require job applicants to disclose their salary history, Kapur ordered Park, over Park's objection, to gather salary information on candidates, and then threatened Park with a negative performance review if Park did not do as directed.  These facts demonstrate the ease with which Kapur blatantly disregards employment laws.

5.     After enduring Defendants' blatant violations of the wage and hour laws and before filing this lawsuit, Plaintiffs complained about those practices and sought their earned wages from Defendants, but without success (other than GoBuyside finally paying Long and Markle their final paychecks long after their departures and only after they retained legal counsel).  As a result, Plaintiffs bring this lawsuit pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and New York Labor Law ("NYLL") § 190 *et seq*., to recover unpaid overtime wages owed to them, as well as liquidated damages, pre- and post-judgment interest, attorneys' fees and costs.  Plaintiffs also bring this lawsuit pursuant to the Fair Labor

---

[1]     Through discovery, Plaintiffs will continue to investigate whether there is a claim against Defendants for deleting personal data from LinkedIn accounts, including under the Computer Fraud and Abuse Act.

Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1) and 216(b), to recover unpaid overtime wages owed to all similarly-situated persons holding the titles of Analyst or Associate who are presently or were formerly employed by GoBuyside and perform or performed non-exempt work during the relevant statute of limitations period, as well as liquidated damages, pre- and post-judgment interest, attorneys' fees and costs.

6.     Before becoming employed by GoBuyside as Analysts, Park and Padilla initially worked at GoBuyside as "Interns," but did not receive any wages whatsoever for their work, even though as Interns they performed job duties similar to that of an Analyst and for the primary benefit of GoBuyside.  Defendants treat Interns the same as employees, and do not provide Interns with education or training that is given in an educational environment.  Instead of paying Park and Padilla for their work as Interns, Kapur enticed them with a sign-on bonus when they commenced employment with GoBuyside as full-time Analysts and made it known that at least part of that bonus was designed to pay them for the time they worked as unpaid Interns. Upon information and belief, if an Intern did not obtain full-time employment with GoBuyside, Defendants did not pay such Intern any wages for his or her work.  Thus, Defendants have used the internships as an unpaid probationary or trial period to decide whether to hire Interns as full-time Analysts.  Not only is it unlawful to fail to pay Interns at least the applicable minimum wage rate for all of their work and in a timely manner, but Defendants have sought to recoup the sign-on bonuses from Park and Padilla, including through an outside collection agency, and thus seek to claw back earned wages in violation of the FLSA and NYLL.

7.     Park and Padilla also bring this lawsuit pursuant to FLSA § 206 and NYLL §§ 650 and 652 to recover unpaid minimum wages owed to them as Interns, as well as liquidated damages, pre- and post-judgment interest, attorneys' fees and costs.  They also bring this lawsuit

pursuant to FLSA §§ 206 and 216(b) as a collective action on behalf of all similarly-situated

persons in the role of Intern who presently or formerly worked for GoBuyside as an Intern and

do not or did not receive at least minimum wages during the relevant statute of limitations

period, as well as liquidated damages, pre- and post-judgment interest, attorneys' fees and costs.

8.      Defendants also failed to furnish Plaintiffs with accurate wage statements listing

the correct hours worked, rates paid, allowances taken and gross wages, in violation of the

NYLL and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. § 137-

2.2, *et seq.* In fact, in some cases, including with Stevens and Long, Defendants filed to provide

them with wage statements.

9.      As set forth below, Stevens, Fernandez, Long and Park also have individual

claims against Defendants for unpaid bonuses and compensation under the NYLL or,

alternatively, for breach of contract or promissory estoppel. Stevens and Fernandez also have

claims for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1132(a)(1)(B), or, in the alternative, for breach of contract or promissory estoppel, for

Defendants' failure to contribute 3% of their respective base salary to a 401(k) account.

**PARTIES**

10.     Stevens, a 2014 graduate of Vanderbilt University, is a citizen of the State of

Tennessee. Stevens worked for GoBuyside as an Associate between June 1, 2016 and November

1, 2017. From May 2016 through August 18, 2017, Stevens worked in GoBuyside's Manhattan

office, but thereafter Kapur agreed that he could work remotely from Nashville, Tennessee.

Stevens recently received an IRS Form W-2 *and* an IRS Form 1099 from GoBuyside for his

income in 2017. He was surprised to receive a Form 1099 for any of his income as an employee

of GoBuyside, which shows that Kapur unlawfully reclassified him as an independent contractor

at some point in late-2017, which Stevens believes may relate to the time period when he was working remotely from Tennessee.  Defendants continued to control and direct all aspects of Steven's work when he worked remotely, including having him use the computer and phone that they issued to him, and thus he was unlawfully classified as an independent contractor.  Stevens never consented to that reclassification, which was done by Kapur without his approval or personal knowledge.  This is yet another example of Kapur's blatant disregard for laws applicable to employment.

11.    Fernandez, a 2011 graduate of University of California - Berkeley, is a citizen of the State of New York.  Fernandez worked for GoBuyside as an Associate from April 4, 2016 through November 17, 2017.  He worked in GoBuyside's Manhattan office.

12.    Long, a 2013 graduate of Colgate University, is a citizen of the State of California.  Long worked for GoBuyside as an Associate and Analyst between February 27, 2017 and September 17, 2017.  He worked in GoBuyside's Manhattan office.

13.    Markle graduated from Stonehill College 2013 and received a Master's Degree from Griffith College – Dublin, Ireland in 2016.  He is a citizen of the State of Connecticut.  Markle worked for GoBuyside as an Analyst from September 16, 2016 through late-July 2017.  He worked in GoBuyside's Manhattan office.

14.    Park, a 2017 graduate of New York University, is a citizen of the State of New York.  Park worked for GoBuyside as an Analyst from June 26, 2017 through January 2, 2018.  He also worked for GoBuyside as an unpaid Intern on at least nine days between March 3 and May 12, 2017.  He worked in GoBuyside's Manhattan office.

15.    Padilla, a 2017 graduate of New York University, is a citizen of the State of New York.  Padilla worked for GoBuyside as an Analyst from June 5, 2017 through January 2, 2018.

He also worked for GoBuyside as an unpaid Intern on at least three days between April 7 and early-June 2017.  He worked in GoBuyside's Manhattan office.

16.     According to GoBuyside's website, www.gobuyside.com, it "is a 21st century recruitment platform that specializes in working with private equity firms, hedge funds, other investment managers, advisory platforms and Fortune 500 companies across a broad spectrum of geographies and mandates."  GoBuyside maintains its principal place of business and transacts business within this District.  Upon information and belief, GoBuyside has "gross volume of sales made or business done" of $500,000 per year and its employees' work involves interstate commerce.

17.     Kapur is GoBuyside's founder, majority shareholder and Chief Executive Officer and resides within this District.

18.     At all times material hereto, GoBuyside and/or Kapur were Plaintiffs' employers within the meaning of the FLSA and NYLL.  In addition, at all times material hereto, GoBuyside was liable for the actions of Kapur under the doctrine of respondeat superior or otherwise.

## JURSIDICTION AND VENUE

19.     The causes of action which form the basis of this lawsuit arise under the FLSA, ERISA, the NYLL and common law.

20.     This Court has jurisdiction over Plaintiffs' FLSA claims and Stevens and Fernandez's ERISA claims pursuant to 28 U.S.C. § 1331, and the Court may exercise supplemental jurisdiction over the NYLL and common law claims pursuant to 28 U.S.C. § 1367(a).

21.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment

practices and conduct set forth herein, occurred in this District and the Defendants transact business in this District.

## FLSA COLLECTIVE ACTION

**Collective Action As To Unpaid Overtime**

22.     Plaintiffs bring their First Cause of Action as a collective action for unpaid overtime under FLSA Sections 207(a)(1) and 216(b), 29 U.S.C. §§ 207(a)(1) & 216(b), on behalf of themselves and all individuals employed by GoBuyside as an Analyst or Associate between April 20, 2015 and the date of final judgment in this lawsuit and who were non-exempt employees within the meaning of the FLSA and who elect to opt into this lawsuit (the "FLSA Overtime Collective Plaintiffs").

23.     Each Plaintiff consents in writing to be a party to this lawsuit under 29 U.S.C. § 216(b).  Their Consent to Sue forms are attached to this Complaint and incorporated by reference.

24.     During the statute of limitations period, Plaintiffs and the other FLSA Overtime Collective Plaintiffs similarly-situated and holding the title or performing the duties of Analysts or Associate have been misclassified as exempt from the overtime provisions of the FLSA and have been subjected to Defendants' decision, policy, plan and common policies, programs, practices, procedures, routines and rules of willfully failing and refusing to pay them one and one-half (1½) times their applicable regular rate of pay for all work in excess of forty (40) hours per workweek.  The Plaintiffs' claims for overtime pay under the FLSA are essentially the same as those of the other FLSA Overtime Collective Plaintiffs.

25.     The First Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to FLSA § 216(b).  The FLSA Overtime Collective Plaintiffs are

readily ascertainable.  For purpose of notice and other purposes related to this lawsuit, their names and addresses are readily available from Defendants' records.  Notice of this lawsuit can be provided to the FLSA Overtime Collective Plaintiffs by U.S. first-class mail or other appropriate means to the last address known to Defendants.

26.     There are questions of law and fact common to the FLSA Overtime Collective Plaintiffs that predominate over any questions affecting only individual members of the FLSA Overtime Collective Plaintiffs, including, but not limited to, the following:

    a.   Whether Plaintiffs and the FLSA Overtime Collective Plaintiffs performed similar job duties?

    b.   Whether GoBuyside misclassified the Plaintiffs and the FLSA Overtime Collective Plaintiffs as exempt from the overtime pay provisions of the FLSA?

    c.   Whether GoBuyside failed to compensate the Plaintiffs and the FLSA Overtime Collective Plaintiffs for hours worked in excess of forty hours in a workweek as Analysts or Associates?

    d.   Whether GoBuyside failed to keep true and accurate time records for all hours worked by Plaintiffs and the FLSA Overtime Collective Plaintiffs and, if so, what proof of hours worked is sufficient under those circumstances?

    e.   What are and were the policies, practices, programs, procedures, plans or rules for which GoBuyside did not pay the Plaintiffs and the FLSA Overtime Collective Plaintiffs overtime rates for their work as Analysts or Associates?

    f.   Whether the Defendants willfully or recklessly violated the FLSA?

**Collective Action As To Unpaid Minimum Wages**

27.     Plaintiffs Park and Padilla bring the Second Cause of Action as a collective action for unpaid minimum wages under FLSA Sections 206 and 216(b), 29 U.S.C. §§ 206 & 216(b), on behalf of themselves and all individuals employed by GoBuyside as Interns between April 20, 2015 and the date of final judgment in this lawsuit and who did not receive minimum wages and who elect to opt into this lawsuit (the "FLSA Minimum Wage Collective Plaintiffs").

28.     During the statute of limitations period, Park, Padilla and the other FLSA Minimum Wage Collective Plaintiffs similarly-situated and holding the title or performing the duties of an Intern and have been subjected to Defendants' decision, policy, plan and common policies, programs, practices, procedures, routines and rules of willfully failing and refusing to pay them the applicable minimum wage for all work for GoBuyside.  Park and Padilla's claims for unpaid minimum wages under the FLSA are essentially the same as those of the other FLSA Minimum Wage Collective Plaintiffs.

29.     The Second Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to FLSA § 216(b).  The FLSA Minimum Wage Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this lawsuit, their names and addresses are readily available from Defendants' records.  Notice of this lawsuit can be provided to the FLSA Minimum Wage Collective Plaintiffs by U.S. first-class mail or other appropriate means to the last address known to Defendants.

30.     There are questions of law and fact common to the FLSA Minimum Wage Collective Plaintiffs that predominate over any questions affecting only individual members of the FLSA Minimum Wage Collective Plaintiffs, including, but not limited to, the following:

a. Whether GoBuyside employed Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs during the time that they were Interns performing work for the Defendants?

b. Whether Defendants were required to pay Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs the minimum wage for all hours worked during their internship?

c. Whether GoBuyside failed to keep true and accurate time records for all hours worked by Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs and, if so, what proof of hours worked is sufficient under those circumstances?

d. What are and were the policies, practices, programs, procedures, plans or rules for GoBuyside regarding the type of work for which Defendants did not pay the Plaintiffs and the FLSA Minimum Wage Collective Plaintiffs the minimum wage as Interns?

e. At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the FLSA Minimum Wage Collective Plaintiffs for their work as Interns?

f. Whether the Defendants willfully or recklessly violated the FLSA?

## **FACTS**

31.     Defendants misclassified Plaintiffs as "exempt" from overtime pay.  As Analysts or Associates, Plaintiffs were more than capable of regularly performing exempt work and exercising discretion or independent judgment as their primary duties, but Kapur would not let them do so.

32.     Despite the fact that Defendants classified Plaintiffs, and all Analysts and Associates, as "exempt" from overtime pay, Kapur nonetheless assigned them clerical work or ministerial tasks as their primary duties, tracked their work hours and activity, often to the minute, and even docked them and required them to take vacation time if they worked anything less than a full 9- or 10-hour shift in a day.

33.     Regardless of their job titles as an Analyst or Associate, Plaintiffs' primary job duties were nearly identical and clerical in nature:  they cold-emailed potential candidates or reviewed GoBuyside's database to see if potential candidates met the stated qualifications provided to them by Kapur and GoBuyside's employer-clients for each job search, and then Plaintiffs manually compiled that data and prepared a "book" of potential candidates for Kapur. Kapur then reviewed that book so that he could narrow down and select the name of the candidates that he decided to provide to GoBuyside's employer-clients.

34.     As Analysts or Associates, Plaintiffs had little to no direct contact with GoBuyside's employer-clients about the candidates, which Kapur handled exclusively, other than to coordinate with some clients to schedule interviews for candidates.  Even then, the Plaintiffs had a limited role in the rote task of scheduling selected candidates for interviews with GoBuyside's employer-clients, when they generally just drafted emails for Kapur to send to the employer-clients' administrative assistants.  Simply put, as Analysts or Associates, the Plaintiffs' work was clerical or ministerial in nature, and they did not exercise independent judgment or discretion or even customarily and regularly perform exempt work, and thus were misclassified as exempt from the overtime pay provisions under the FLSA and NYLL.

35.     Based upon Plaintiffs' knowledge and observations in interacting with their co-workers at GoBuyside, the FLSA Overtime Collective Plaintiffs performed the same duties as

Plaintiffs and were treated the same way by Defendants, as set forth in paragraphs 32 through 34 above.

36.     For each Plaintiff's total hours of work as an Analyst or Associate, GoBuyside paid him a fixed salary only, with no extra pay for any time worked in excess of 40 hours in a workweek.  Yet, Plaintiffs regularly were required to work at least 50 or 60 hours per week, and sometimes more, throughout the year.  For example, during more than a two-month period of time in the Fall of 2016, Kapur required Stevens, Fernandez, Markle and all the Analysts and Associates to work an additional 9 to 10 hours over the weekend on a website project for GoBuyside, which involved the clerical task of data input and updating information on candidates' profiles within GoBuyside's database, thereby increasing their work hours to at least 60 to 70 hours per week during that time period.

37.     GoBuyside lacked any lawful basis for classifying Plaintiffs and the FLSA Overtime Collective Plaintiffs as exempt from overtime, and it had no good-faith basis for doing so.  Consequently, Defendants' conduct, as set forth herein, was in bad faith, malicious, willful, wanton, intentional, reckless and outrageous under the circumstances, and warrants an award of liquidated damages in favor of Plaintiffs and the FLSA Overtime Collective Plaintiffs.

38.     As Interns, Park and Padilla generally performed work similar to that described in paragraphs 32 through 34 above for Analysts and Associates, except that they had more clerical duties and no communications with GoBuyside's employer-clients.

39.     Instead of paying Park and Padilla for their work as Interns, Kapur enticed them with a sign-on bonus when they commenced employment with GoBuyside as full-time Analysts and he has made it known that at least part of that bonus is designed to pay them for the time they worked as unpaid Interns.  Upon information and belief, if an Intern did not obtain full-time

employment with GoBuyside, Defendants did not pay such Intern any compensation for his or her work.  Thus, Defendants have used the internships as an unpaid trial or probationary work period to decide whether to hire Interns as full-time Analysts.

**Lucas Stevens' Unpaid Wages and Benefits**

40.     GoBuyside paid Stevens an annual salary of $60,000 from June 1, 2016 through November 1, 2017, or $1,250 per week, which is a regular hourly rate of $31.25 per hour and an overtime rate of $46.875 (*i.e.*, 1½ x his regular hourly rate).  Excluding time when Stevens did not work more than 40 hours in a workweek, either because GoBuyside was closed for major holidays or he was on vacation, he regularly worked at least 50 hours per week for at least 13 weeks between June 1, 2016 and September 11, 2016, for a total of at least 130 overtime hours (10 hours x 13 weeks), he worked at least 60 hours per week for 8 out of 10 weeks between September 12, 2016 and November 20, 2016 and worked at least 50 hours per week for the other 2 out of 10 weeks during this time period, for a total of at least 180 overtime hours (20 hours x 8 weeks and 10 hours x 2 week), and he worked at least 50 hours per week for at least 25 weeks between November 21, 2016 and September 1, 2017, for a total of at least 250 overtime hours (10 hours x 25 weeks).  Stevens worked a total of at least 560 overtime hours during his employment and he is owed at least $26,250 in unpaid overtime (560 hours x $46.875 per hour).

41.     By email dated December 17, 2016, and a letter dated December 28, 2016, Kapur agreed to pay Stevens a $20,000 "guaranteed retention bonus" if he "remain[ed] employed at GoBuyside until July 1, 2017," and Kapur agreed to pay that bonus "within 30 days" after July 1, 2017.  Stevens agreed to, signed and returned the December 28 letter agreement to Kapur and he remained employed at GoBuyside as of July 1, 2017, but Defendants failed to pay the $20,000 bonus to Stevens and have refused to do so to date.

42.     In his December 17, 2016 email, Kapur also agreed to give Stevens an "additional $10,000 bonus if you [Stevens] close more than 12 searches."  Stevens closed more than 12 searches, but Defendants failed to pay the $10,000 bonus to Stevens and have refused to do so to date.

43.     Kapur strongly encouraged Stevens to join Equinox Fitness Club, and he promised to give Stevens $1,000 toward his membership at Equinox.  Based on Kapur's representation, Stevens joined Equinox.  Defendants, however, failed to pay Stevens the $1,000 subsidy toward the membership and have refused to do so to date.

44.     Kapur offered to pay employees a $1,000 placement bonus for referring a new employee to GoBuyside.  Stevens referred employee P.U.[2] to GoBuyside and it hired P.U., but Defendants failed to pay Stevens the $1,000 placement bonus and have refused to do so to date.

45.     On May 1, 2016, Kapur sent Stevens an email to memorialize GoBuyside's offer on employment to Stevens.  Kapur's email stated that, "[a]fter one year at the firm, you can enroll into the 401K.  Our 401K provides a *guaranteed 3%* (no matching required); so you will receive 3% of your base salary in your 401K twice a month with no need for you to contribute anything."  (Emphasis added.)  Despite that promise concerning a purported 401(k) plan, which Stevens relied upon in accepting employment with GoBuyside, Defendants did not make an contribution of 3% of Stevens' base salary of $60,000, or any contribution.  In fact, Defendants never gave Stevens information about the 401(k) plan.  Stevens believes that this promise was yet another one of Kapur's bait-and-switch tactics to recruit employees for GoBuyside by making promises and then reneging on those promises once the employment relationship

---

[2]     In October 2017, Stevens' attorneys provided Defendants with "P.U.'s" full name, but for privacy and confidentiality reasons, Stevens is using this employee's initials only.  If necessary, Stevens will provide the Court with P.U.'s full name.

commenced.  Regardless, it constitutes a violation of ERISA, for which Stevens is entitled to benefits.

**Gustavo Fernandez's Unpaid Wages and Benefits**

46.     GoBuyside paid Fernandez an annual salary of $60,000 from April 4, 2016 through June 30, 2017, or $1,250 per week, which is a regular hourly rate of $31.25 per hour and an overtime rate of $46.875 per hour (*i.e.*, 1½ x his regular hourly rate).  Excluding time when Fernandez did not work more than 40 hours in a workweek, either because GoBuyside was closed for major holidays or he was on vacation, he regularly worked at least 50 hours per week for at least 18 weeks between April 2016 through August 2016, for a total of at least 180 overtime hours (10 hours x 18 weeks), he worked at least 60 hours per week for 9 weeks between September 2016 and November 2016, for a total of at least 180 overtime hours (20 hours x 9 weeks), and he worked at least 50 hours per week for at least 23 weeks between December 2016 through June 30, 2017, for a total of at least 230 overtime hours (10 hours x 23 weeks).  Fernandez worked a total of at least 590 overtime hours during the time period from April 4, 2016 through June 30, 2017, and he is owed at least $27,656.25 in unpaid overtime for this time period (590 hours x $46.875 per hour).

47.     GoBuyside paid Fernandez an annual salary of $65,000 from July 1, 2017 through November 17, 2017, or $1,354.16 per week, which is a regular hourly rate of pay was $33.85 per hour and an overtime rate of $50.78 (*i.e.*, 1½ x his regular hourly rate).[3]  Except during those weeks when GoBuyside was closed for major holidays or Fernandez was on vacation, he worked at least 50 hours per week for at least 10 weeks during this time period, for a total of 100

---

[3]     Kapur had agreed to pay Fernandez an annual salary of $70,000 as of October 1, 2017, but never did so.

overtime hours (10 hours x 10 weeks), and he is owed at least $5,078 in unpaid overtime for this time period (100 hours x $50.78 per hour). Therefore, Defendants owe Fernandez a total of at least $32,734.25 in unpaid overtime during his employment.

48.     On August 16, 2017, Defendants also agreed to pay Fernandez a $20,000 bonus when he accumulated "2 Talent Points" for his work that resulted in placing four candidates. Fernandez achieved that objective and earned the bonus, but Defendants have refused to pay Fernandez the $20,000 bonus that he earned for his productivity.

49.     On March 26, 2016, Kapur sent Fernandez an email, entitled "GoBuyside Offer Letter," stating that, "[a]fter one year at the firm, you can enroll into the 401K. Our 401K provides a *guaranteed 3%* (no matching required); so you will receive 3% of your base salary in your 401K twice a month with no need for you to contribute anything." (Emphasis added.) Despite that promise concerning a purported 401(k) plan, which Fernandez relied upon in accepting employment with GoBuyside, Defendants did not make a contribution of 3% of Fernandez's base salary of $60,000, or any contribution. In fact, Defendants never gave Fernandez information about the 401(k) plan. Fernandez believes that this promise was yet another one of Kapur's bait-and-switch tactics to recruit employees for GoBuyside by making promises and then reneging on those promises once the employment relationship commenced. Regardless, it constitutes a violation of ERISA, for which Fernandez is entitled to benefits.

**Christian Long's Unpaid Wages**

50.     Upon hiring Long as an Associate at GoBuyside as of February 27, 2017, Kapur agreed to pay Long an annual salary of $60,000 and a sign-on bonus of $17,500. But, a few months into Long's employment, Kapur, utilizing his bait-and-switch strategy, as is his wont, unilaterally decreased Long's annual salary to $50,000 and lowered his sign-on bonus to

$10,000. Kapur also changed Long's title from Associate to Analyst after about a month of employment.

51.     GoBuyside paid Long an annual salary of $60,000 from February 27 to mid-June 2017, or $1,250 per week, which is a regular hourly rate of $31.25 per hour and an overtime rate of $46.875 (*i.e.*, 1½ x his regular hourly rate). GoBuyside paid Long an annual salary of $50,000 from mid-June through September 17, 2017, which is $1,042 per week or $26.04 per hour and an overtime rate of $39.06. Long regularly worked at least 50 hours per week during his employment, except for those workweeks when GoBuyside was closed for major holidays or when he was on vacation. For the 15-week period between February 17, 2017 and mid-June 2017, when Long received an annual salary of $60,000, he worked at least 150 hours in overtime and is owed $7,031.25 for this period (150 hours x $46.875 per hour). For the 13-week period between mid-June 2017 and September 17, 2017, when Long received an annual salary of $50,000, he worked at least 110 hours in overtime and is owed $4,296.60 for this period (110 hours x $39.06 per hour). In total, Defendants owe Long at least $11,327.85 in unpaid overtime during his employment with GoBuyside.

52.     GoBuyside also deliberate failed to pay Long his salary for his last two weeks of work. GoBuyside only paid Long for these two weeks after his attorneys sent a letter to Kapur on October 23, 2017, about GoBuyside's unlawful failure to pay Long his salary, overtime or referral bonus. Even then, however, GoBuyside underpaid Long by $264 in salary and failed to pay him for his hours worked over 40 per workweek, the $1,000 referral bonus or for the attorneys' fees that he incurred in recouping his unpaid salary as a result of Defendants' clear violation of the law.

53.     Kapur offered to pay employees a $1,000 placement bonus for referring a new employee to GoBuyside.  Long referred employee V.W.[4] to GoBuyside and it hired V.W., but Defendants failed to pay Long the $1,000 placement bonus and have refused to do so to date. Moreover, when long asked Kapur in mid-September 2017 when he would be paid this placement bonus and when he would receive his past due salary and wage statements, Kapur retaliated against Long, stating that because Long had asserted a claim, including filing a small claims matter in New York State Court which he subsequently withdrew without prejudice, Kapur told Long that "because you filed a claim [for wages], you will not see that bonus."

**Samuel Markle's Unpaid Wages**

54.     GoBuyside paid Markle an annual salary of $50,000, or $1,041.66 per week, which is a regular hourly rate of $26.04 per hour and an overtime rate of $39.06 (*i.e.*, 1½ x his regular hourly rate).  For 9 weeks between his date of hire on September 16, 2016 and November 2016, Markle worked at least 60 hours per week, including working on the website project over the weekends, for a total of at least 180 overtime hours during that time (20 hours x 9 weeks). Defendants owe Markle $7,030.80 in overtime pay for this time period (180 hours x $39.06 per hour).  Markle worked at least 50 hours per week from December 2016 through his last day of employment in July 2017, except for workweeks when he took vacation or was not working overtime because GoBuyside was closed for major holidays.  Thus, he worked at least 50 hours per week for at least 28 weeks during this time period, for a total of 280 hours of overtime (10 hours x 28 weeks), and he is owed at least $10,936.80 in overtime pay for this time period (280

---

[4]     In October 2017, Long's attorneys provided Defendants with "V.W.'s" full name, but for privacy and confidentiality reasons, Long is using this employee's initials only.  If necessary, Long will provide the Court with V.W.'s full name.

hours x $39.06 per hour).  In total, Defendants owe Markle at least $17,967.60 in unpaid

overtime during his employment with GoBuyside.

54. 55.       GoBuyside also deliberate failed to pay Markle his salary for his last two weeks

of work in July 2017.  On November 9, 2017 – over three months after Markle left his

employment – GoBuyside finally paid Markle for those two weeks, and that was only after his

attorneys sent a letter to Kapur on October 23, 2017, about GoBuyside's unlawful failure to pay

Markle his salary and overtime.  Even then, however, GoBuyside did not pay Markle for his

hours worked over 40 per workweek and failed to pay him for the attorneys' fees that he incurred

in recouping his unpaid salary as a result of Defendants' clear violation of the law.

**GunnWoo Park's Unpaid Wages**

56.       Park worked as an Intern at GoBuyside on at least nine Fridays between March 3,

2017 and May 12, 2017.  On those days, he worked at least 9 hours each day.  Thus, Defendants

owe Park for at least 81 hours of work at the applicable minimum wage under the NYLL or

FLSA.

57.       GoBuyside paid Park an annual salary of $50,000, or $1,041.66 per week, which

is a regular hourly rate of $26.04 per hour and an overtime rate of $39.06 (*i.e.*, 1½ x his regular

hourly rate).  Between June 26, 2017 and December 29, 2017, Park worked at least 50 hours per

week, except during workweeks when he took vacation or did not work overtime because

GoBuyside was closed for major holidays.  Thus, Park worked at least 220 hours of overtime

over 22 weeks (10 hours x 22 weeks), and he is owed at least $8,593.20 (220 hours x $39.06 per

hour) in unpaid overtime.

58.     Kapur offered to pay employees a $1,000 placement bonus for referring a new employee to GoBuyside.  Park referred employee Padilla to GoBuyside and it hired Padilla, but Defendants failed to pay Park the $1,000 placement bonus and have refused to do so to date.

**Jose Padilla's Unpaid Wages**

59.     Padilla worked as an Intern at GoBuyside on at least three Fridays between April 2017 and early-June 2017.  On those days, he worked at least 9 hours each day.  Thus, Defendants owe Padilla for at least 27 hours of work at the applicable minimum wage under the NYLL or FLSA.

60.     GoBuyside paid Padilla an annual salary of $50,000, or $1,041.66 per week, which is a regular hourly rate of $26.04 per hour and an overtime rate of $39.06 (*i.e.*, 1½ x his regular hourly rate).  Between June 5, 2017 and December 29, 2017, Padilla worked at least 50 hours per week, except during workweeks when he took vacation or did not work overtime because GoBuyside was closed for major holidays.  Thus, Padilla worked at least 250 hours of overtime over 25 weeks (10 hours x 25 weeks), and he is owed at least $9,765 (250 hours x $39.06 per hour) in unpaid overtime.

**Failure to Provide Plaintiffs with Accurate or Any Wage Statements**

61.     On several occasions, Long and Stevens sought to obtain their wage statements or pay stubs from GoBuyside, but without success.  Stevens recently learned that Defendants' failure to provide him with his wage statements was particularly important for him, since Defendants unlawfully reclassified him as an independent contractor at some point in late-2017, and apparently only paid him the net amount of his salary.  Had Defendants provided wage statements to Stevens, he could have discovered this unlawful reclassification long ago.

21

62.     Plaintiffs' wage statements inaccurately listed the hours they worked, including omitting any overtime hours, while some employees did not receive wage statements.  Park and Padilla also did not receive wage statements as Interns.

63.     Plaintiffs bring their Fifth Cause of Action for Defendants' failure to provide them with accurate wage statements during their employment, as required under the NYLL § 195.3.

## FIRST CAUSE OF ACTION
## (Violation of the FLSA for Failure to Pay Overtime)

64.     Plaintiffs incorporate herein by reference paragraphs 1 through 63, as if set forth herein in their entirety.

65.     Defendants were required to pay Plaintiffs and the FLSA Overtime Collective Plaintiffs no less than one and one-half (1½) times the regular rate at which they were employed for all hours worked in excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207(a)(1).

66.     At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiffs and the FLSA Overtime Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek, and therefore are liable for such overtime pay.

67.     Defendants failed to pay Plaintiffs and the FLSA Overtime Collective Plaintiffs their earned overtime pay, and therefore are liable for such overtime pay under the FLSA.

68.     Defendants were aware or should have been aware that the practices described herein were unlawful, making their violations willful or reckless.  Defendants have not made a good-faith effort to comply with the FLSA with respect to Plaintiffs and the FLSA Overtime Collective Plaintiffs' compensation.

69.     To Plaintiffs' knowledge, Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201 & 207(a)(1).

70.     As a direct result of the Defendants' unlawful and willful conduct, Plaintiffs and the FLSA Overtime Collective Plaintiffs are entitled to their overtime pay, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs incurred in connection with this lawsuit.

## SECOND CAUSE OF ACTION
### (Violation of the FLSA for Failure to Pay Minimum Wages to Interns)

71.     Park and Padilla incorporate herein by reference paragraphs 1 through 70, as if set forth herein in their entirety.

72.     The minimum wage provisions in Section 206 of the FLSA, 29 U.S.C. § 206, apply to Defendants and protect Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs with respect to their work as unpaid Interns.

73.     Under the FLSA, Defendants were required to pay Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs the statutory minimum wage for their work as Interns.

74.     Defendants failed to pay Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs the statutory minimum wage for each hour worked as Interns, making Defendants liable for those hours at the statutory minimum wage.

75.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay the Park, Padilla and the FLSA Minimum Wage Collective Plaintiffs the applicable minimum wage.

76.     As a direct result of the Defendants' unlawful and willful conduct, Park, Padilla

and the FLSA Minimum Wage Collective Plaintiffs are entitled to recover from Defendants their

unpaid minimum wages as Interns, liquidated damages, pre- and post-judgment interest,

attorneys' fees and costs incurred in connection with this lawsuit.

## THIRD CAUSE OF ACTION
### (Violation of the NYLL for Failure to Pay Overtime)

77.     Plaintiffs incorporate herein by reference paragraphs 1 through 76, as if set forth

herein in their entirety.

78.     Under the NYLL and supporting New York Statement Department of Labor

Regulations, Defendants were required to pay Plaintiffs one and one-half (1½) times their regular

rate of pay for all hours they worked in excess of forty (40) hours per workweek.

79.     At all relevant times, Defendants had a policy and practice of refusing to pay

overtime compensation to Plaintiffs for their hours worked in excess of forty (40) hours per

workweek.

80.     Defendants failed to pay Plaintiffs their earned overtime pay, and therefore are

liable for such overtime pay under NYLL § 650 and Part 142, § 142-2.2 of Title 12 of the

Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of

Labor.

81.     Defendants were aware or should have been aware that the practices described

herein were unlawful, making their violations willful or reckless.  Defendants have not made a

good-faith effort to comply with the NYLL with respect to Plaintiffs compensation.

82.     As a direct result of the Defendants' unlawful and willful conduct, Plaintiffs are

entitled to their overtime pay, liquidated damages, pre- and post-judgment interest, attorneys'

fees and costs incurred in connection with this lawsuit.

**FOURTH CAUSE OF ACTION**
**(Violation of the NYLL for Failure to Pay Minimum Wages to Park and Padilla)**

83.     Park and Padilla incorporate herein by reference paragraphs 1 through 82, as if set forth herein in their entirety.

84.     The minimum wage provisions in the NYLL apply to Defendants and protect Park and Padilla with respect to their work as unpaid Interns.

85.     Under the NYLL and supporting Regulations, Defendants were required to pay Park and Padilla the statutory minimum wage for their work as Interns.

86.     Defendants failed to pay Park and Padilla the statutory minimum wage for each hour worked as Interns, making Defendants liable for those hours at the statutory minimum wage.

87.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the Park and Padilla the applicable minimum wage.

88.     As a direct result of the Defendants' unlawful and willful conduct, Park and Padilla Wage Class are entitled to recover from Defendants their unpaid minimum wages as Interns, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs incurred in connection with this lawsuit.

**FIFTH CAUSE OF ACTION**
**(Violation of NYLL for Failure to Provide Accurate Wage Statements)**

89.     Plaintiffs incorporate herein by reference paragraphs 1 through 88, as if set forth herein in their entirety.

90.     NYLL § 195.3 provides that "Every employer shall:"

> . . . furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis

thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

91.     Defendants failed to furnish the Plaintiffs with a wage statement with every wage payment listing, among other things, the correct hours they worked as Analysts or Associates (including overtime hours) or as Interns, the regular and overtime hours and the rates paid, allowances taken or net wages, in violation of NYLL § 195.3 and supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. § 137-2.2 *et seq.*

92.     As a direct result of Defendants' violations of NYLL § 195.3, Plaintiffs are entitled to recover from Defendants $250 for each work day that the violations occurred or continue to occur – up to a total of $5,000 per Plaintiff, as provided for in NYLL § 198(1)-d – attorneys' fees, costs and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
**(Violation of the NYLL for Failure to Pay**
**Earned Wages to Stevens, Fernandez, Long and Park)**

93.     Stevens, Fernandez and Long incorporate herein by reference paragraphs 1 through 92, as if set forth herein in their entirety.

94.     Under the NYLL and supporting Regulations, Defendants were obligated to pay Stevens, Fernandez, Long and Park for all wages, including bonuses, that they earned.

95.     As set forth in paragraphs 41 through 43, 48, 53 and 58 above, Defendants owe Stevens earned wages and compensation in the total amount of $32,000, owe Fernandez earned

wages in the amount of $20,000, owe Long earned wages in the amount of $1,000, and owe Park earned wages in the amount of $1,000.

96.     In addition, when Defendants unlawfully converted Stevens from an employee to an independent contractor in late-2017, they reduced his pay to provide him with what he believes was his net pay from his annual salary of $60,000.  As a result of this unlawful reclassification, Defendants must make Stevens whole, including paying him for any lost wages and all required employment taxes.

97.     By failing to pay Stevens, Fernandez, Long and Park for these earned wages, Defendants have violated the NYLL.

98.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Stevens, Fernandez, Long and Park for these earned wages.

99.     As a direct result of the Defendants' unlawful and willful conduct, Stevens, Fernandez, Long and Park are entitled to recover from Defendants their earned and unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs incurred in connection with this lawsuit.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract on behalf of Stevens, Fernandez, Long and Park)**

100.     Stevens, Fernandez and Long incorporate herein by reference paragraphs 1 through 99, as if set forth herein in their entirety.

101.     As set forth in paragraphs 41 through 43 above, Defendants were contractually obligated to pay Stevens for the bonuses and stipend at issue in the total amount of $32,000. Defendants, however, unlawfully breached their agreements with Stevens and failed to pay him this money.  Defendants therefore owe $32,000 to Stevens for breach of contract.  In addition, when Defendants unlawfully converted Stevens from an employee to an independent contractor

in late-2017, they reduced his pay to provide him with what he believes was his net pay from his annual salary of $60,000.  As a result of this unlawful reclassification, Defendants must make Stevens whole, including paying him for any lost wages and all required employment taxes.

102.    As set forth in paragraph 48 above, Defendants were contractually obligated to pay Fernandez for the bonus in the amount of $20,000.  Defendants, however, unlawfully breached their agreement with Fernandez and failed to pay him this money.  Defendants therefore owe $20,000 to Fernandez for breach of contract.

103.    As set forth in paragraph 53 above, Defendants were contractually obligated to pay Long for the placement bonus in the amount of $1,000.  Defendants, however, unlawfully breached their agreement with Long and failed to pay him this money.  Defendants therefore owe $1,000 to Long for breach of contract.

104.    As set forth in paragraph 58 above, Defendants were contractually obligated to pay Park for the placement bonus in the amount of $1,000.  Defendants, however, unlawfully breached their agreement with Park and failed to pay him this money.  Defendants therefore owe $1,000 to Park for breach of contract.

### EIGHTH CAUSE OF ACTION
### (Promissory Estoppel on behalf of Stevens, Fernandez, Long and Park)

105.    Stevens, Fernandez and Long incorporate herein by reference paragraphs 1 through 104, as if set forth herein in their entirety.

106.    As set forth in paragraphs 41 through 43 above, Defendants promised to pay Stevens for the bonuses and stipend at issue in the total amount of $32,000.  Stevens reasonably relied upon those promises to his detriment.  Defendants, however, failed to pay him this money. Defendants therefore owe $32,000 to Stevens based on promissory estoppel.  In addition, when Defendants unlawfully converted Stevens from an employee to an independent contractor in late-

2017, they reduced his pay to provide him with what he believes was his net pay from his annual salary of $60,000. Stevens relied upon his classification as an employee to continue to work for GoBuyside. As a result of this unlawful reclassification and Steven's reasonable reliance on Defendants' classification of him as an employee, which was to his detriment, Defendants are liable under the theory of promissory estoppel and must make Stevens whole, including paying him for any lost wages and all required employment taxes.

107.    As set forth in paragraph 48 above, Defendants promised to pay Fernandez for the bonus in the amount of $20,000. Fernandez reasonably relied upon the promise to his detriment. Defendants, however, failed to pay him this money. Defendants therefore owe $20,000 to Fernandez based on promissory estoppel.

108.    As set forth in paragraph 53 above, Defendants promised to pay Long for a placement bonus in the total amount of $1,000. Long reasonably relied upon the promise to his detriment. Defendants, however, failed to pay him this money. Defendants therefore owe $1,000 to Long based on promissory estoppel.

109.    As set forth in paragraph 58 above, Defendants promised to pay Park for a placement bonus in the total amount of $1,000. Park reasonably relied upon the promise to his detriment. Defendants, however, failed to pay him this money. Defendants therefore owe $1,000 to Park based on promissory estoppel.

**NINTH CAUSE OF ACTION**
**(Violation of ERISA on behalf of Stevens and Fernandez)**

110.    Stevens and Fernandez incorporate herein by reference paragraphs 1 through 109, as if set forth herein in their entirety.

111.    Section 502(a)(1)(B) of ERISA provides that a plan participant may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

112.    Based on the offer of employment that Stevens and Fernandez received from GoBuyside, it maintained a 401(k) plan, which would be governed by ERISA.

113.    GoBuyside informed both Stevens and Fernandez that he was a plan participant within one year after the commencement of his employment and promised to make a contribution to a 401(k) account for Stevens and Fernandez, equal to 3% of their respective base salary.  To Stevens and Fernandez's knowledge, no such contributions were made after one year of employment, even though they were employed by GoBuyside for at least one year.

114.    As a result of Defendants failure to make contributions to a 401(k) account for Stevens and Fernandez, it violated ERISA and Stevens and Fernandez are entitled to contributions equal to 3% of their respective base salary, together with pre-and post-judgment interest, attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**<u>(Breach of Contract for Benefits on Behalf of Stevens and Fernandez)</u>**

115.    Stevens and Fernandez incorporate herein by reference paragraphs 1 through 114, as if set forth herein in their entirety.

116.    As set forth in paragraphs 45 and 49 above, Defendants were contractually obligated to Stevens and Fernandez to contribute 3% of their respective base compensation to a retirement plan for each of them.  Defendants, however, unlawfully breached their agreements with Stevens and Stevens by failing to pay them this money.  Defendants therefore owe such contributions to Stevens in the amount of no less than $1,000 and to Fernandez in the amount of no less than $1,800 for breach of contract, plus pre- and post-judgment interest.

30

**ELEVENTH CAUSE OF ACTION**
**(Promissory Estoppel for Benefits on Behalf of Stevens and Fernandez)**

117.    Stevens and Fernandez incorporate herein by reference paragraphs 1 through 116, as if set forth herein in their entirety.

118.    As set forth in paragraphs 45 and 49 above, Defendants promised to contribute 3% of Stevens and Fernandez's respective salary into a retirement account.  In accepting employment with GoBuyside, Stevens and Fernandez each reasonably relied upon those promises to his detriment.  Defendants, however, failed to make these contributions to Stevens and Fernandez.  Defendants therefore owe at least $1,000 to Stevens and at least $1,800 to Fernandez based on promissory estoppel, plus pre- and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Overtime Collective Plaintiffs and the FLSA Minimum Wage Collective Plaintiffs, pray that this Court enter judgment in their favor and against the Defendants, jointly and severally, and grant to them the following:

A.    Designate this lawsuit as a collective action on behalf of the FLSA Overtime Collective Plaintiffs with respect to the First Cause of Action for unpaid overtime and, pursuant to FLSA § 216(b), promptly issue a notice to all similarly-situated Analysts and Associates of the FLSA opt-in collective action to apprise them of the pendency of this lawsuit and permit them to assert timely claims for overtime pay under the FLSA by filing individual Consent to Sue forms;

B.    Designate Plaintiffs as representatives of the FLSA Overtime Collective Plaintiffs;

31

C.      An award to Plaintiffs and the FLSA Overtime Collective Plaintiffs for unpaid overtime pay under the FLSA and to Plaintiffs for unpaid overtime pay under the NYLL;

D.      Designate this lawsuit as a collective action on behalf of the FLSA Minimum Wage Collective Plaintiffs with respect to the Second Cause of Action for unpaid minimum wages and, pursuant to FLSA § 216(b), promptly issue a notice to all similarly-situated Interns of the FLSA opt-in collective action to apprise them of the pendency of this lawsuit and permit them to assert timely claims for overtime pay under the FLSA by filing individual Consent to Sue forms;

E.      Designate Park and Padilla as representatives of the FLSA Minimum Wage Collective Plaintiffs;

F.      An award to Park and Padilla and the FLSA Minimum Wage Collective Plaintiffs for unpaid minimum wages under the FLSA and to Park and Padilla for unpaid minimum wages under the NYLL with respect to their work as Interns;

G.      An award to Plaintiffs the damages provided for in NYLL § 198(1)-d for Defendants' violation of NYLL § 195.3;

H.      An award to Stevens, Fernandez, Long and Park for their unpaid bonuses and compensation under the NYLL or, in the alternative, for breach of contract or promissory estoppel;

I.      An award to Stevens to make him whole for the period of time that Defendants unlawfully reclassified him from an employee to an independent contractor, including any lost wages and paying any employment taxes;

32

J.     An award of benefits to Stevens and Fernandez for Defendants' failure to make contributions to Steven's and Fernandez's retirement accounts, in violation of ERISA or, in the alternative, for breach of contract or promissory estoppel;

K.     An award for liquidated damages under the FLSA and NYLL;

L.     A declaration that Defendants cannot claw-back earned wages that were paid through purported sign-on or retention bonuses;

M.     An award for pre- and post-judgment interest;

N.     An award for attorneys' fees and costs incurred in connection with this lawsuit; and

O.     An award of such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by on all issues of fact, their claims and damages herein.

Dated: New York, New York
April 20, 2018

CERASIA & DEL REY-CONE LLP

By  s/ Edward Cerasia II
    Edward Cerasia II
    Christie Del Rey-Cone
    Alison L. Tomasco
150 Broadway, Suite 1517
New York, New York 10038
646.525.4231
ed@cdemploymentlaw.com
christie@cdemploymentlaw.com
alison@cdemploymentlaw.com

Attorneys for Plaintiffs and
Proposed FLSA Collective Plaintiffs